**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| Whitehall Trust, et al.,[1] | ) Case No. 25-15241 (PMM) |
| | ) |
| Debtors. | ) Jointly Administered |

**RESPONSE OF DILWORTH PAXSON LLP TO LEHIGH VALLEY I, LLC'S
OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY
DILWORTH PAXSON LLP AS COUNSEL**

Lehigh Valley I, LLC's (the "Lender") objection to Debtors' Application to Employ Dilworth Paxson, LLP as Counsel (the "Objection") is not supported by the facts or applicable case law and should be overruled.

## BACKGROUND

On December 26, 2025 (the "Petition Date"), the above-captioned Debtors filed voluntary petitions for Chapter 11 relief, seeking joint administration and procedural consolidation of their related cases. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

Also on December 26, 2025, the Debtors filed an Application Pursuant to 11 USC § 327(a) and Federal Rule of Bankruptcy Procedure 2014 and Local Bankruptcy Rule 2014-1 for Authority to Employ Dilworth Paxson LLP ("Dilworth") as Bankruptcy Counsel [D.I. 30]. The Application included a Declaration of Michelle V. Lee of Dilworth and Statement Pursuant to Bankruptcy Rules 2014(a) and 2016(b) ("the Lee Declaration") [D.I. 30-1] that disclosed, among other things that the only payments received by Dilworth within 90 days of the Petition Date were two retainers for future services. Lee Declaration, ¶ 7.

---

[1] The Debtors and debtors-in-possession in these Chapter 11 Cases and the last four digits of their respective taxpayer identification numbers are as follows: (i) Whitehall Trust (4229); (ii) Saucon Trust (4229); (iii) Whitehall Manor, Inc. (5606); (iv) Saucon Valley Manor, Inc. (2894). The Debtors' mailing address is 1177 6th Street, Whitehall, PA 18052.

The initial retainer was paid in connection with an engagement letter dated December 11, 2025 pursuant to which Dilworth was retained to provide a preliminary assessment of bankruptcy options. In advance of providing such services, Dilworth required an initial retainer to be wired to it. Because the Debtors' bank accounts required an authorized individual to go to the bank and complete a form for a wire transfer, Valley Realty Holdings, another company owned by the Debtors' principal, Abraham Atiyeh, wired $25,000 to Dilworth on the Debtors' behalf and Debtor Whitehall Manor, Inc. reimbursed Valley Realty Holdings for the $25,000 paid on its behalf.

In providing its initial assessment, it became clear that the Debtors required Chapter 11 relief to effectively and efficiently reorganize the financial issues that they were facing. Accordingly, on December 17, 2025, the Debtors entered into a second engagement letter with Dilworth pursuant to which Dilworth agreed to provide Chapter 11 services. The Debtors paid a retainer of $100,000 to Dilworth on December 18, 2025 pursuant to the second retainer letter. The retainer was comprised of a payment of $50,000 from Debtor Whitehall Manor, Inc. and $50,000 from Debtor Saucon Valley Manor, Inc.

Billings to the Debtors following receipt of the retainers exceeded the retainers, with Dilworth writing off the balance in excess of the retainers. Lee Declaration, ¶¶ 9, 10.

Dilworth further disclosed its belief that it represented no interest adverse to the Debtors following its review of its relationships with the Debtors, the Lender, the Debtors' creditors and persons and entities related to the Debtors. Lee Declaration, ¶ 14. In that regard, Dilworth disclosed that, in the 1990s, it had represented the Debtors' principal, Abraham Atiyeh, personally, in matters that were closed long ago. Dilworth also previously represented Debtor Saucon Trust in 2023 in connection with a loan modification, which matter was also closed. Finally, Dilworth disclosed that it had represented Debtor Saucon Valley Manor, Inc. and Nimita Kapoor-Atiyeh in 2019 in a litigation matter than had since been closed. Interestingly, Lender's counsel, Hangley,

2

Aronchick, Segal, Pudlin & Schiller, also represented Debtor Saucon Valley Manor Inc. and Ms. Kapoor-Atiyeh in that litigation matter. Hangley's role was far more extensive, charging the debtors over $2 million in fees, compared to the Dilworth fees of $125,000.

Subsequent to filing the Application, and in response to inquiries by the US Trustee, Dilworth has voluntarily provided the US Trustee with additional documents and other information regarding its representation.  These requested and produced documents include detailed billing records and wire transfer records (to verify that payments were made as represented).  The Debtors have been providing the US Trustee with all documents and information requested regarding the Application and the Debtors have agreed to extend the US Trustee's deadline to object to the Application to January 23, 2026 due to an  intervening scheduled vacation by US Trustee counsel.

On January 7, 2026, the Lender filed its Objection [D.I. 71].

The Lender contends that Dilworth should not be retained because of a purported actual conflict of interest involving the Lender's belief as to each Debtor's best interest.  As there is no conflict of interest, actual or potential, there is no basis for disqualification and the objection must be overruled.

## **DISCUSSION**

The Court of Appeals has, on multiple occasions, identified the framework by which the Bankruptcy Court should construe objections to retention of debtor's counsel:

> (1) Section 327(a), as well as §327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an *actual conflict of interest*; (2) the district court may within its discretion-pursuant to § 327(a) and consistent with § 327(c)-disqualify an attorney who has a *potential conflict of interest* and (3) the district court may not disqualify an attorney on the *appearance of conflict* alone.

*In re Marvel Entertainment Group, Inc.*, 140 F.3d. 463, 476 (3rd Cir. 1998) (reversible error to disqualify trustee's counsel based on an appearance of a conflict).  In *Marvel*, the Court found that

#125399328v1

the former, unrelated representation of a secured creditor that might taint the trustee and his counsel's objectivity was, at best, an appearance of impropriety and not proper grounds for disqualification.

### A.  Dilworth is not subject to disqualification under Section 327(a).

Dilworth's pre-petition relationship with Mr. Atiyeh and one or more of the Debtors in prior wholly unrelated matters that have long-since concluded does not rise even to the level of the appearance of conflict of interest.  The Manor Debtors in these cases are S-corporations of Mr. Atiyeh's and the Trust Debtors exist only because of a HUD requirement when the loans now held by the Lender were initiated.  The Debtors are co-dependent entities and all are under Mr. Atiyeh's ultimate control.  Their interests are fully aligned.  Even if Dilworth's prior contact with Mr. Atiyeh and a Debtor entity appeared to create a conflict of interest, such appearance would not be a basis to disqualify Dilworth from representing the Debtors in these bankruptcy cases.

The Lender's argument to the contrary defies logic and is wholly based on the Lender's desire to displace Mr. Atiyeh and his family so that the Lender can acquire the Debtors' businesses for itself.  The Lender is a hedge fund that acquired its interest in the Debtors' assets at a substantial discount with the goal of either acquiring the ongoing operations or obtaining a huge profit on a payoff.  At the first day hearing in this case, Lender's counsel admitted as much by stating that it had another operator ready to step in and operate the Debtors' businesses.[2]

---

[2] Ironically, if anyone has the appearance of a conflict, it is Lender's counsel.  The Hangley firm represented the Saucon Valley Manor Debtor in a prior litigation matter along with Debtors' counsel.  That litigation was not a small matter.  In fact, Lender's counsel was paid in excess of $2 million in counsel fees and acquired significant knowledge of that Debtor's operations, profitability at the time, and of Ms. Atiyeh's diligence and knowledge of the business operations.  Lender's counsel knows for a fact that the Saucon Valley Manor Debtor was very profitable and well-run until the COVID pandemic negatively impacted its revenues.  Unfortunately for the Debtors, there is a risk now that Lender's counsel may be able to use the volume of information and data about the profitability and workings of the Saucon Valley Manor Debtor from that prior litigation to benefit the Lender's attempt to acquire the Debtors' operations in these cases, knowing that the Atiyeh family has built a strong family of businesses.

4

In its objection, the Lender asserts that Dilworth has an actual conflict of interest based on its assumption that the Trust Debtors can only reorganize if they receive rent from the outset of these cases to service the Lender's mortgages, but the Manor Debtors need the rent under the leases to be as low as possible in order to sustain their operations. [Objection, ¶¶ 25, 26]. Lender's supposition in this regard is mistaken and ignores that the aligned interests of the Debtors' is critical for any of them to maximize value and reorganize, and in order for the Lender and other creditors to recover on their claims in accordance with the Bankruptcy Code.

The reality of the Debtors' circumstances reveals the fallacy in the Lender's position. Indeed, for the Trust Debtors to reorganize, the Manor Debtors must continue operating to earn the revenue necessary to pay rent and reorganize, even if it means the Manor Debtors must request an extension of certain Bankruptcy Code provisions to achieve those goals, delaying the Trust Debtors' ability to make mortgage payments to the significantly under-secured Lender. To be sure, if the Manor Debtors are required to immediately begin making rent payments and the Trust Debtors immediately must make mortgage payments, the only conceivable outcome is that the Manor Debtors will lose their ability to reorganize and will fail, resulting in no revenue to pay rent, causing the Trust Debtors to also fail and the Lender to achieve its goal of acquiring the Debtors' assets and operations in the short term, leaving all other creditors with nothing and negatively impacting the ongoing services provided to the Debtors' residents and their families. The Lender also fails to mention that it benefits whether the Trust Debtors pay rent or not, and whether the Lease amendments[3] are valid or not, because the Lender asserts a security interest in all of the Debtors' assets and would recover whether through rental payments or collection of assets if the

---

[3] Lender's focus on the 2023 amendments to the Leases that were invalidated prepetition and insistence that the validity of those amendments is critical to the Manor Debtors is a red herring. Indeed, the Debtors will be resolving the lease issues as part of a Chapter 11 plan, whether the 2023 amendment is effective or not. The validity of the amendment is irrelevant to the Debtors' reorganization efforts. Rather, the key issue in these cases is the value of the Lender's lien and the determination of what part of its debt must be serviced in a plan of reorganization.

#125399328v1

Debtors operations ceased. The Lender's arguments regarding the needs of each Debtor entity are self-serving, at best.

By contrast, the Debtors intend in these bankruptcy cases to resolve the Lender's claims, continue to work with the taxing authorities to bring their tax obligations current (the Lender expressly acknowledges the Debtors' successful work pre-petition in this regard [Objection, ¶10]), consolidate their operations given that HUD no longer holds the mortgages, therefore, separate property and operating companies are no longer required, and emerge as financially healthy personal care homes to continue providing top-level services to their residents and maintain the employment of all employees.

As was evident by the testimony of Mr. and Ms. Atiyeh at the first day hearing in these cases, since the COVID pandemic, the Atiyeh family has streamlined operations in order for the Debtors to recover financially, through shared services among the Debtors and affiliate Manors, paying themselves below market salaries to best ensure successful restructuring.

Accordingly, contrary to the Lender's unsupported supposition about what each Debtor entity needs in these Chapter 11 cases, the Debtors' interests are wholly aligned with the goal of mutual success.  There is no actual or potential conflict of interest for Dilworth to represent these affiliated debtor entities.

Importantly, the Lender cites no applicable authority that Dilworth's representation, under the facts and circumstances of these cases, is an actual or potential conflict of interest.

The Lender relies in large part on the Chapter 11 case filed by *The Harris Insurance Company,* Case No. 09-10384 (JKF) in the United States Bankruptcy Court for the Eastern District of Pennsylvania, in which retired Judge Fitzsimon disqualified debtor's counsel due to an actual conflict of interest that existed on the petition date and continued thereafter [Objection, ¶¶ 34, 35]. The facts and circumstances underling Judge Fitzsimon's ruling in the *Harris* case are completely

6

different than those in the instant cases. In *Harris*, there were no affiliated debtor entities and the principals of the debtor and its affiliates were actively trying to harass and hide assets and information from the lender consortium. Debtor's counsel was not disqualified due to any conflicting interests of affiliated debtors. Rather, debtor's counsel was not only simultaneously representing affiliated non-debtor entities and their principals while seeking Chapter 11 relief for the affiliated Harris entity, and was being paid, prepetition and post-petition (without bankruptcy court authorization), by two affiliated non-debtor entities that had interests directly adverse to the debtor. Moreover, debtor's counsel failed to disclose these facts, requiring disqualification, disgorgement and sanctions.

The *Harris* case is wholly irrelevant to these cases. In these cases, all of the affiliated entities that have any potential obligation to the Lender are debtors who will be proceeding in Chapter 11 in unison to resolve their obligations to the Lender in a manner consistent with the Bankruptcy Code. There are no affiliated non-debtors that are represented by Dilworth. Dilworth has fully disclosed its relationship with the Debtors, their prior relationships with principals and their affiliates. To the extent that the information in the Application or Lee Declaration requires further information, Dilworth is diligently working with the US Trustee to ensure that she has all of the information requested and will file a supplemental declaration, if needed. Dilworth does not now and has never represented any of the Debtors' non-debtor affiliates. The only payment Dilworth received from a non-debtor affiliate was at the Whitehall Manor Debtor's direction and convenience to facilitate a wire transfer of the initial retainer, which was contemporaneously repaid by the Whitehall Manor Debtor to its affiliate Valley Realty Holdings. Dilworth provided no services to Valley Realty Holdings or any non-debtor affiliate, nor represented a person or entity with interests adverse to the Debtors in these cases. Dilworth is not a creditor of any of the Debtors and holds no interest adverse to any of the Debtor entities and should not be disqualified. *See e.g.*

7

*In re Campbell-Erskine Apothecary, Inc.*, 302 B.R. 169 (Bankr. W.D. Pa. 2003) (the Court overruled an objection to debtor's counsel's retention, finding that the objecting party failed to establish that counsel's interests were adverse to those of the debtor or the estate; no showing that counsel was a prepetition creditor of the bankruptcy estate, and debtor's shareholder's payment of $850 to counsel for the filing fee and prepetition representation of debtor in state court proceeding, without more, did not establish that counsel's interest was adverse to that of the estate).

Further, simply because there are intercompany obligations between and among the Debtors does not create an actual or potential conflict of interest among the Debtors that would disqualify Dilworth from representing these affiliated entities, jointly.

In fact, one would be hard-pressed to find a case in this Circuit in which affiliated debtor entities did not have intercompany obligations or were required to retain separate bankruptcy counsel, multiplying the costs of Chapter 11, simply because of intercompany or co-debtor obligations. The intercompany obligations are simply resolved in a joint Chapter 11 plan, along with the debtors' other obligations. In none of the cases cited by the Lender was debtors' counsel disqualified simply because counsel represented affiliated debtor entities that were co-debtors on certain obligations or held intercompany claims.

Dilworth has represented many debtors with intercompany obligations, including those in which an operating entity owed a rent to another debtor that was to be used to service a mortgage. *See e.g. In re CarePoint Health System Inc. d/b/a Just Health Foundation, et al.*, Case No. 24-12534 (JKS) pending in the United States Bankruptcy Court for the District of Delaware and involving three hospital entities, each of which owed intercompany rent obligations to other jointly administered debtor entities who are obligated to service mortgages on their respective properties; *In re Philadelphia Orchestra Association, et al.*, Case No. 11-13098 (ELF), involving two

affiliated debtors, each with lease obligations to the same non-debtor entity as well as shared services among the two debtors and unrelated non-debtor entity.

In many cases, counsel can and does represent multiple debtor affiliates, or even a debtor and its shareholder or sole stockholder, simultaneously in a bankruptcy case. *In re BH&P, Inc.,* 94 F.2d 1300, 1314 (3d Cir. 1991)(existence of inter-debtor claims is not a *per se* disqualifying criteria for counsel); *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 149 (3d Cir. 2010) (bankruptcy court did not abuse its discretion by permitting counsel to represent debtor corporation in its Chapter 11 and sole shareholder in its Chapter 13); *see also In re Hurst Lincoln Mercury, Inc.*, 80 B.R. 894, 895 (Bankr. S.D. Ohio 1987) (simultaneous representation of a corporation and its sole stockholder not improper per se).

Accordingly, the Manor Debtors' obligation to pay rent to the Trust Debtors is an inter-company claim and, like all other obligations of the Debtors, can and will be addressed in a Chapter 11 plan. The existence of routine inter-debtor claims does not preclude Dilworth from representing the Debtors in these cases.

## CONCLUSION

There is no actual or potential conflict of interest for Dilworth to represent the Debtors in these cases.  Dilworth is not a creditor and represents no interest adverse to any of the Debtors; therefore, there is no actual or potential conflict of interest between Dilworth and any of the Debtor entities.  Moreover, the fact that the Manor Debtors owe rent to the Trust Debtors does not create a conflict of interest between the Debtor entities that would disqualify Dilworth.  The Debtors' interests are wholly aligned despite the intercompany debt. Such intercompany debt is commonplace in Chapter 11 cases involving affiliated debtors in this Circuit and elsewhere.  The existence of inter-debtor claims is not a basis to disqualify debtor's counsel or require separate counsel for each affiliated debtor, dramatically increasing the cost of the case. The Debtors will

#125399328v1

resolve all of their respective debts, including intercompany debt and their obligations to the Lender in a Chapter 11 plan in due time. Because there are no grounds for disqualification, the Objection must be overruled.

Dated:    January 21, 2026        **/s/**  Anne Aaronson

          Philadelphia, Pennsylvania     **DILWORTH PAXSON LLP**
Lawrence G. McMichael
Anne M. Aaronson
Michelle V. Lee
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
Email: lmcmichael@dilworthlaw.com
      aaaronson@dilworthlaw.com
      mlee@dilworthlaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

#125399328v1