IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WHITEHALL TRUST, | : | Case No. 25-15241 (PMM) |
| *Debtor*. | : | (Jointly Administered) |
|  | : |  |

**SECURED CREDITOR LEHIGH VALLEY 1, LLC'S SUPPLEMENTAL OBJECTION TO DEBTORS' CASH COLLATERAL MOTION AND LENDER'S CROSS-MOTION FOR SANCTIONS**

Secured Creditor Lehigh Valley 1, LLC ("Lender") hereby supplements its prior objections to the Debtors' Cash Collateral Motion and moves this Court for entry of an Order determining that (A) non-debtor entities shall reimburse Whitehall Trust, Saucon Trust (with Whitehall Trust, the "Trust Debtors"), Whitehall Manor, Inc., and Saucon Valley Manor, Inc. (with Whitehall Manor, Inc., the "Manor Debtors"; collectively, with the Trust Debtors, the "Debtors") for wages paid to Priya Kapoor-Atiyeh after the Petition Date; (B) Debtors shall not pay Priya Kapoor-Atiyeh's salary going forward; and (C) Debtors are subject to sanctions to reimburse Lender for the costs associated with the taking of Priya Kapoor-Atiyeh's deposition and the filing of this Supplemental Objection based on Debtors' misrepresentations made to this Court during the December 30, 2025 hearing and bringing this Supplemental Objection and Cross-Motion. In support thereof, Lender states as follows:

**INTRODUCTION**

1. On December 30, 2025, this Court held a hearing to address Debtors' "First-Day Motions" including Debtors' motions regarding payment of pre-petition wages and the use of cash collateral (the "First-Day Hearing").

2. During the First-Day Hearing, Debtors made direct (and false) representations to this Court and to Lender regarding Priya Kapoor-Atiyeh's alleged employment at the Debtors' facilities, her compensation, the number of hours that she works at Debtors' facilities, the kinds of work that she performs at these facilities, and evidence which was to purportedly verify Debtors' claims regarding Priya Kapoor-Atiyeh's work at Debtors' facilities.

3. However, Debtors' representations were completely false.

4. On January 22, 2026, Lender took the deposition of Priya Kapoor-Atiyeh, during which she directly contradicted Debtors' assertions regarding her employment. Priya Kapoor-Atiyeh admitted that she primarily works for a non-debtor facility – Parkland Manor – and that she barely has any connection to the Debtors' facilities.

5. Nonetheless, it appears that the Debtors are in fact paying her salary.

6. Priya Kapoor-Atiyeh further testified (in direct contradiction to the representations made to this Court), that she does not do admissions, operations, or administration for the Debtors, only payroll.

7. Priya Kapoor-Atiyeh further testified (in direct contradiction to the representations made to this Court) that the information in the job description provided only related to Parkland Manor (a non-debtor entity) and not to the Debtor entities.

8. Based on Priya Kapoor-Atiyeh's deposition testimony, it is evident that Debtors made misrepresentations to this Court during the First-Day Hearing regarding Priya Kapoor-Atiyeh's employment.

9. Lender seeks an order determining that (A) the non-debtor entities for which Priya Kapoor-Atiyeh works must reimburse Debtors for the payment of Priya Kapoor-Atiyeh's salary since the Petition Date; (B) Debtors shall stop paying Priya

Kapoor-Atiyeh's salary prospectively; and (3) Debtors are subject to sanctions to reimburse Lender for the taking of Priya Kapoor-Atiyeh's deposition and preparing and filing this Supplemental Objection and Cross-Motion based on Debtors' misrepresentations during the First-Day Hearing.

## FACTUAL BACKGROUND

10. On December 26, 2025, Debtors each filed a petition for bankruptcy.

11. Debtors then filed a Motion for an Order (A) Authorizing the Debtors to Pay Certain Pre-Petition (I) Wages, Salaries, and Other Compensation, (II) Reimbursable Employee Expenses, and (III) Employee Medical and Similar Benefits; and (B) Directing Banks and Other Financial Institutions to Honor All Related Checks and Electronic Payment Requests (the "Wages Motion", ECF No. 18). In this motion, Debtors sought an order authorizing the Debtors to pay certain pre-petition wages, salaries, and other compensation including to Priya Kapoor-Atiyeh.

12. Debtors also filed a Motion for (1) Interim and Final Orders (A) Authorizing Debtors to Use Cash Collateral of Existing Secured Party and Granting Adequate Protection for Use and (B) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing and (2) Expedited Hearing on the Relief Sought Herein (the "Cash Collateral Motion", ECF No. 14).

13. Lender objected to Debtors' Wages Motion and Debtors' Cash Collateral Motion to the extent Debtors sought to pay wages to Abraham Atiyeh's – the Manager of the Trust Debtors – wife and daughter (Priya Kapoor-Atiyeh).

14. On December 30, 2025, this Court held a hearing on Debtors' "First-Day Motions," including Debtors' Wages Motion and Debtors' Cash Collateral Motion. Lender's objection to Debtors' motions regarding the payment of Priya Kapoor-Atiyeh

was noted on the record. *See* Dec. 30, 2025 Hearing Tr., at 43:12-24, attached as Exhibit A.

15. In response to Lender's objection, Debtors' counsel asserted in relevant part, as follows:

> They [Mr. Atiyeh's wife and daughter] are employees of the manors, and only work for the manors. They do quite a bit of work here, Your Honor. Ms. Atiyeh is paid about 80,000, and Priya -- I don't know if her last name is Atiyeh, as well -- is paid 95,000. The reason why her pay is higher is because she actually provides direct care to the patients, including administering medication and what have you.

*Id.* at 42:17-24.

16. Debtors further asserted that Ms. Atiyeh and Ms. Kapoor-Atiyeh

> are administrators who are required to be there by law. At a minimum, we know that they're there at least 20 hours a week because that's by law. And in addition to that, we produced to them information related to, for example, the daughter, that we could provide the – I guess there's some kind of system that logs in every time you're administering medication, you have to log that in.

*Id.* at 44:25-45:7.

17. Debtors represented to this Court that they "can get affidavits from other employees that yes, these women are working 70 plus hours a week and they're always here." *Id.* at 45:16-18.

18. On January 7, 2026, this Court granted the Debtors' Wages Motion and ordered that "Debtors are authorized, but not directed, to pay its employees and 1099 independent contractors (excluding the Debtor's sole shareholder/officer/director) the gross wages, salaries, compensation, employment benefits, and other related obligations,

4

for the Prepetition Pay Period (as defined in the Motion)." January 1, 2026 Order, ECF No. 75. This included payment of Priya Kapoor-Atiyeh's pre-petition wages and salary.

19. In reliance on the misrepresentations Debtors made to this Court during the First-Day Hearing about Priya Kapoor-Atiyeh, Lender took Priya Kapoor-Atiyeh's deposition on January 22, 2026.

20. During her deposition, Priya Kapoor-Atiyeh directly contradicted the Debtors' misrepresentations made to this Court about her employment at Debtors' facilities.

21. Priya Kapoor-Atiyeh testified that she primarily works for Parkland Manor – a non-debtor facility – and that she barely has any connection to the Debtors' facilities.

22. During her deposition, Priya Kapoor-Atiyeh was shown, and confirmed the accuracy of, a document titled "Copy of Employees At Multiple Manors (3) – including depts.xlsx", which is attached here as Exhibit B, and which was produced to Lender by Debtors on January 21, 2026 – the eve of Priya Kapoor-Atiyah's deposition.

23. This document states that Priya Kapoor-Atiyeh is an employee of Whitehall Manor, Saucon Valley Manor, and Parkland Manor, in addition to multiple other non-debtor facilities. *See id*. Her department is listed as "Administration." *See id*.

24. The document also provides information about the estimated average hours per week that Priya Kapoor-Atiyeh, and other employees, spend at each of the respective facilities. *See id*.

25. As to Priya Kapoor-Atiyeh's estimated number of hours, the document states that she works an average of 5 hours at Saucon Valley Manor, an average of 2 hours at Whitehall Manor, and an average of 55 hours at Parkland Manor (a non-debtor entity). *See id*.

26. The document speaks for itself and directly contradicts Debtors' representations to this Court that Priya Kapoor-Atiyeh is working a minimum of 20 hours per week, and actually working 70 hours per week for the Debtors.

27. Priya Kapoor-Atiyeh spends very little time at either of Debtors' facilities. *See id.*

28. Further, the hours listed on this document are consistent with Priya Kapoor-Atiyeh's direct deposition testimony that she principally works at Parkland Manor and she has very little to do with either Whitehall Manor or Saucon Manor.

29. Again, this directly contradicts Debtors' misrepresentations that Priya Kapoor-Atiyeh "only works for the Manors," that she does a lot of work at Debtors' facilities but she was required by law to spend at least 20 hours per week at Debtors' facilities, and that employees can attest to the fact that Priya Kapoor-Atiyeh was spending around 70 hours per week at Debtors' facilities. *See* Dec. 30, 2025 Hearing Tr., at 42:17-24; 44:25-45:7; 45:16-18.

30. Additionally, the fact that Priya Kapoor-Atiyeh's department is identified as "Administration" further directly contradicts Debtors' misrepresentations made to this Court regarding Priya Kapoor-Atiyeh's compensation being higher because she "actually provides direct care to the patients, including administering medication." *Id.* at 42:20-24.

31. This document also identifies Priya Kapoor-Atiyeh as being on Debtor Whitehall Manor's payroll. *See* Ex. B. This payroll fact, as confirmed by Priya Kapoor-Atiyeh during her deposition, is further confirmed by a December 26, 2025 paystub for Priya Kapoor-Atiyeh. *See* Monthly Operating Report at p. 38, ECF No. 113, attached as Exhibit C.

6

32. In sum, during the First-Day Hearing, the Debtors made the following misrepresentations to this Court, which are directly contradicted by Priya Kapoor-Atiyeh's deposition testimony and by:

   a. Priya Kapoor-Atiyeh works only for the Manor Debtors;

   b. Priya Kapoor-Atiyeh's higher salary is based on her providing of direct care to the patients at the Debtors' facilities;

   c. Priya Kapoor-Atiyeh is required to be at the Debtors' facilities for at least 20 hours per week by law;

   d. Employees can attest to the fact that Priya Kapoor-Atiyeh is spending 70 hours per week at Debtors' facilities; and

   e. Priya Kapoor-Atiyeh provides direct care to the patients at Debtors' facilities.

33. In reliance on Debtors' misrepresentations, Lender spent time, money, and resources preparing for and taking Priya Kapoor-Atiyeh's deposition.

34. After Priya Kapoor-Atiyeh's deposition, Lender knows the following to be true, which actual facts are directly contrary to Debtors' misrepresentations to this Court at the First-Day Hearing:

   a. Priya Kapoor-Atiyeh works at numerous non-debtor facilities, and primarily spends her time at Parkland Manor (a non-debtor entity);

   b. Priya Kapoor-Atiyeh is not providing actual patient care at the Debtors' facilities;

   c. Priya Kapoor-Atiyeh spends an average of 3-5 hours per week at Debtors' facilities handling payroll;

d. Priya Kapoor-Atiyeh spends most of her time – approximately 55 hours per week – at Parkland Manor, a non-debtor facility; and

e. The alleged job description for Priya Kapoor-Atiyeh relates only to Parkland Manor (a non-debtor entity).

35. Notwithstanding the foregoing, based on the Debtors' representations made to this Court, and the paystub provided, Debtor Whitehall Manor is paying Priya Kapoor-Atiyeh's full salary.

36. Because Priya Kapoor-Atiyeh primarily works at a non-debtor facility, Lender seeks an order ending Debtors' payment of Priya Kapoor-Atiyeh's salary going forward and requiring that the non-debtor affiliates for which she does work reimburse the Debtors for the salary they have paid to Priya Kapoor-Atiyeh since the Petition Date. Additionally, because Lender took Priya Kapoor-Atiyeh's deposition based on Debtors' misrepresentations, Lender seeks monetary sanctions from Debtors to reimburse Lender for the costs associated with taking Priya Kapoor-Atiyeh's deposition and the filing of this pleading.

**RELIEF REQUESTED**

37. Lender seeks an order determining that (A) the non-debtor entities for which Priya Kapoor-Atiyeh works shall reimburse Debtors for the payment of Priya Kapoor-Atiyeh's salary paid post-petition; (B) Debtors shall stop paying Priya Kapoor-Atiyeh's salary going forward; and (3) Debtors are subject to monetary sanctions to reimburse Lender for the costs associated with taking Priya Kapoor-Atiyeh's deposition because Lender's sought her deposition based on Debtors' misrepresentations during the First-Day Hearing and bringing this Supplemental Objection and Cross-Motion.

# ARGUMENT

38. Chapter 11 debtors owe a duty of candor to their counsel and the Court.

39. Generally, "[a] client has a … duty to be honest with its counsel and to affirmatively notify its counsel to correct mistakes, misrepresentations, and misapprehensions." *Donofrio v. Ikea US Retail, LLC*, No. 18-599, No. 19-1286, No. 19-723, 2024 WL 1998094, at * 20 (E.D. Pa. May 6, 2024); *accord Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("[T]he client has a duty to be candid and forthcoming with the lawyer, and when the lawyer responds, he or she speaks for the client.").

40. As to Chapter 11 debtors, "bankruptcy under any chapter of the Code demands disclosure, transparency and candor." *In re Visicon Shareholders Trust*, 478 B.R. 292, 320 (Bankr. S.D. Ohio 2012). For example, Chapter 11 debtors "have duties of candor in their disclosure of assets and liabilities, in exchange for a discharge." *In re Fonner*, 573 B.R. 741, 744 (Bankr. S.D. Ohio, 2017) (citing 11 U.S.C. § 521(a)(1)).

41. In *In re Visicon Shareholders Trust*, the Bankruptcy Court granted the lender's motion to dismiss and motion to prohibit the Chapter 11 debtor's use of lender's cash collateral, in part, because of the debtor's lack of candor to the Court during the bankruptcy proceedings. 478 B.R. at 309, 320.

42. During the First-Day Hearing, Debtors made numerous direct misrepresentations to the Court regarding Priya Kapoor-Atiyeh's involvement in the Debtors' facilities. Specifically, Debtors misrepresented that Priya Kapoor-Atiyeh only works for Debtors' facilities, that she spent at least 20 hours per week and up to 70 hours per week at Debtors' facilities, and that she administers medications and direct care to the patients at the Debtors' facilities.

9

43. The Debtors are represented here through Abraham Atiyeh – who purports to be responsible for all of the Debtors and related entities – and Nimita Kapoor-Atiyeh – the President of the Manor Debtors. Abraham Atiyeh and Nimita Kapoor-Atiyeh are also Priya Kapoor-Atiyeh's parents. At the time of the First-Day Hearing, Debtors must have been aware that Priya Kapoor-Atiyeh was primarily an employee of Parkland Manor and that she had very little involvement with Debtors' facilities and the patients at Debtors' facilities.

44. Debtors' making contentions before the Court and providing false evidentiary support in their possession proves the Debtors' factual contentions incorrect, and is a clear violation of the Debtors' duty of candor to their counsel and the Court.

45. Debtors' lack of candor and transparency directly undermines these proceedings and wastes the time and resources of Lender and this Court.

46. For example, Lender deposed, and spent time and money in the preparation and deposition of Priya Kapoor-Atiyeh based on Debtors' misrepresentations. But for Debtors' misrepresentations to support Debtors' motions for continued excessive payment to an alleged necessary employee, Lender would not have deposed Priya Kapoor-Atiyeh. Lender thus seeks appropriate sanctions from Debtors in a monetary award sufficient to reimburse Lender for costs associated with taking Priya Kapoor-Atiyeh's deposition.

47. Moreover, attorneys, like Chapter 11 debtors, "ha[ve] an overarching duty of candor to the Court." *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 790 (E.D. Pa. 1994). "The duty of candor takes its shape from the larger object of preserving the integrity of the judicial system." *Donofrio v. Ikea US Retail, LLC*, No. 18-599, No. 19-1286, No. 19-723, 2024 WL 1998094, at * 20 (E.D. Pa. May 6, 2024) (quotation omitted).

48. Pursuant to Rule 3.3 of the Pennsylvania Rules of Professional Conduct, "[a] lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Pa. R. Prof'l Conduct 3.3(a)(1).

49. Where an attorney fails to comply with Rule 3.3 and violates their duty of candor to the Court, the Court may order appropriate sanctions. *See, e.g., Eagan by Keith*, 855 F. Supp. at 791 (revoking attorney's *pro hac vice* admission where counsel violated his duty of candor to the court).

50. Further, where an attorney makes misrepresentations to the Court, the nearly identical Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011 permit a Court to order appropriate sanctions. *See* Fed. R. C. P. 11(b); Fed. R. Bankr. P. 9011(b).

51. Federal Rule of Bankruptcy Procedure 9011 provides as follows:

> By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
>
> ...
>
> (3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b)(3), (4).

11

52. To the extent Debtors' counsel were aware of the misrepresentations, and presented those misrepresentations during their advocacy before this Court with respect to Debtors' Wages Motion and Debtors' Cash Collateral Motion, Debtors' counsel may themselves be subject to sanctions.

53. Further, Debtors' counsel have a clear duty to correct the record now that accurate information has been brought to light.

**RESERVATION OF RIGHTS**

54. Notwithstanding the foregoing, Lender reserves all of its present and future rights, claims, and remedies with respect to its liens and security interests in the Debtors' property, including, without limitation, (i) its right to challenge the validity, extent, perfection, and priority of any liens or interests asserted by the Debtor or any other party in interest in such property; (ii) its right to contest the Debtors' proposed use of cash collateral and to seek appropriate adequate protection, including additional or replacement liens, additional adequate protection payments, or superpriority claims; (iii) its right to require valuations and to object to any valuation methodologies; (iv) its right to seek modification, expansion, or termination of the use of cash collateral if protections are inadequate; (v) its right to seek relief from the automatic stay on any applicable grounds or to seek other relief as permitted by the Bankruptcy Code; (vi) its right to seek to dismiss the Debtors' bankruptcy cases on any other available grounds; and (vi) any other rights and remedies available under applicable law, equity, or contract.

WHEREFORE, the Lender respectfully requests that this Court enter an Order determining that (A) the non-debtor entities for which Priya Kapoor-Atiyeh works shall reimburse Debtors for any payments of Priya Kapoor-Atiyeh's salary since the Petition Date; (B) Debtors shall immediately stop paying Priya Kapoor-Atiyeh's salary; and (3)

Debtors are subject to monetary sanctions to reimburse Lender for the costs associated with taking Priya Kapoor-Atiyeh's deposition because Lender's sought her deposition based on Debtors' misrepresentations during the First-Day Hearing and for bringing this Supplemental Objection and Cross-Motion, and the record should be corrected to reflect the accurate facts relating Priya Kapoor-Atiyeh's job duties.

                                                                                 Respectfully Submitted,

                                                                                 HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: January 23, 2026                By: */s/ Matthew A. Hamermesh*
                                                                                   Matthew A. Hamermesh
                                                                               One Logan Square, 27th Floor
                                                                               Philadelphia, PA 19103-6933
                                                                               (215) 568-6200
                                                                               mhamermesh@hangley.com

                                                                               BERGER LAW GROUP, P.C.
                                                                               Phillip D. Berger
                                                                               919 Conestoga Road, Building 3, Suite 114
                                                                               Bryn Mawr, PA 19010
                                                                               (610) 668-0800
                                                                               Berger@BergeLawPC.com

                                                                               *Attorneys for Secured Creditor Lehigh Valley 1, LLC*