# THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>Whitehall Trust, et al.,[1]<br><br>               Debtors. | Chapter 11<br>Case No. 25-15241<br><br>Jointly Administered |

## DEBTORS' OBJECTION TO MOTION OF LEHIGH VALLEY 1, LLC FOR DETERMINATION THAT TRUST DEBTORS ARE SUBJECT TO SINGLE ASSET REAL ESTATE PROVISIONS OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their proposed counsel, Dilworth Paxson LLP, hereby submit this objection (the "Objection") to the *Motion of Secured Creditor Lehigh Valley 1, LLC for Determination that Trust Debtors are Subject to Single Asset Real Estate Provisions of the Bankruptcy Code* (the "Motion") [ECF 95] and, in support hereof, respectfully state as follows:

## BACKGROUND

1. On December 26, 2025 (the "Petition Date"), the Debtors each filed a petition for relief under Chapter 11 of title 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. As of the date of the filing of this Objection, no official committee of unsecured creditors, trustee, or examiner has been appointed or designated in these cases.

3. The Debtors consist of two corporations, Whitehall Manor, Inc. and Saucon Valley Manor, Inc. (the "Corporate Debtors") and two trusts, Whitehall Trust and Saucon

---

[1] The Debtors in these Chapter 11 Cases are: (i) Whitehall Trust; (ii) Saucon Trust; (iii) Whitehall Manor, Inc. (5606); (iv) Saucon Valley Manor, Inc. (2894).

Trust (the "Trust Debtors") that, together and under common management and control, operate two personal care homes in Whitehall Township, Pennsylvania and Saucon Valley, Pennsylvania, respectively.

4. The Debtors in these Chapter 11 cases own, operate and/or are otherwise affiliated with the operation of two personal care homes that are ultimately owned by Abraham Atiyeh and/or an entity as to which he is the beneficiary.

5. The personal care homes are licensed under the rules and regulations of the Commonwealth of Pennsylvania and, to reduce expenses and operate cost-effectively and efficiently, are managed by the same management company, sharing several employees and services.

6. The real property on which the personal care homes operate was acquired by Mr. Atiyeh in the 1990's for the purpose of providing locations for the personal care homes.

7. In 2008, Trust Debtors obtained mortgages with M&T Realty Capital Corporation (M&T).

8. Upon information and belief, the Trust Debtors were created for business purposes as directed by the original lender, M&T, pursuant to the US Department of Housing and Urban Development ("HUD") underwriting requirements for Multifamily Housing Projects.

9. To obtain financing for mortgages backed by HUD, M&T also required the Manor Debtors to enter into Security Agreements to use Manor Debtors property as additional collateral.

10. Both the Manor and Trust debtors were also required to enter into Regulatory

Agreements with HUD in addition to the Mortgages and Security Agreements. These Regulatory Agreements established a number of conditions, including the requirement to be jointly audited.

11. Each year, a HUD approved, independent auditor would prepare a Financial Statements and Auditors' report for HUD. These reports combined the financial information and liabilities by property and corresponding entity to prepare a report. Specifically, Saucon Valley Manor and Saucon Trust would be combined in one report and Whitehall Trust and Whitehall Manor would be combined in another.

12. Since 2008, HUD and the original lender (M&T) treated the Trust Debtors and Manor Debtors operating on the real properties as a unit, despite requiring separate ownership of the real property and operating entities.

13. At the date of filing, Whitehall has [127] residents, which includes [13] memory care individuals. SVM has [197] residents, including [77] memory care individuals.

14. The Debtors utilize the services of the same accountants and bookkeepers and management company and operate as a unit.

### THE TRUST DEBTORS ARE NOT SARE ENTITIES AS INTENDED BY THE BANKRUPTCY CODE

15. On January 13, 2026, Lehigh Valley 1, LLC ("Lender") filed the Motion seeking entry of an order determining that the Trust Debtors are subject to the single asset real estate provisions of the Bankruptcy Code ("SARE"). [ECF 95].

16. The Lender's attempt to separate the two Trust Debtors from the Debtors as a whole and view them in a vacuum to have them treated as SARE entities should be denied under the facts and circumstances of these cases.

17. Section 362(d)(3) of the Bankruptcy Code provides that the bankruptcy court shall **terminate, modify or annul** the automatic stay (emphasis added):

> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> (B) the debtor has commenced monthly payments that—
> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3).

18. The Trust Debtors originally designated themselves as SARE entities in their Chapter 11 petitions, which were filed on an emergent basis over the recent holiday season to prevent the imminent closure of their facilities to the detriment of their residents and employees as a result of certain ongoing litigation involving the Lender that brought the Debtors' need to reorganize their organizations as a whole to a head.

19. Subsequently, based on a review of relevant case law interpreting the SARE provisions of the Bankruptcy Code and receipt of additional financial information from the Debtors, the Trust Debtors believe they do not meet the requirements for SARE designation and will amend their petitions accordingly.

20. Under Section 101(51B) of the Bankruptcy Code, "the term "[single asset real estate](#)" means real property constituting a single property or project, other than residential

real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." All three prongs must be met for a debtor to fall within the ambit of section 362(d)(3). *In re View West Condominium Assoc., Inc.,* Case No. 08-11561-BKC-RAM (Bankr. S.D. Fla. July 29, 2008) (citing *Ad Hoc Group of Timber Noteholders v. Pacific Lumber Co. (In re Scotia Pacific Co., LLC),* 508 F.3d 214, 220 (5th Cir. 2007) and *In re Kara Homes, Inc.*, 363 B.R. 399 (Bankr. D.N.J. 2007). *See also, In re Philmont Development Co.*, 181 B.R. 220 (Bankr. E.D. Pa. 1995) and *In re Pensignorkay, Inc.*, 204 B.R. 676 (Bankr. E.D.Pa. 1997), both addressing the application of SARE elements prior to the 2005 BAPCPA revisions removing debt limitations.

21. While the Trust Debtors do each own a single parcel of real property, they generate their gross income not from their ownership of the real property but from rental payments from their affiliated Manor Debtors that operate substantial personal care homes on the real property. Moreover, the Trust Debtors are responsible for payment of property taxes and maintenance of the real property.

22. The cases in which debtors are determined to be SARE entities have historically involved ownership of raw land or real estate holdings with minimal economic activity that raise questions whether the entity, whose sole asset is over-encumbered real estate and only income is derived from passive use of the land, should be able to reorganize under chapter 11, as opposed to entities that were part of active business operations. *See e.g. In re Koopmans*, 22 B.R. 395, 400 (Bankr. D. Utah 1982); *In re Oceanside Mission Assoc.*, 192

B.R. 232, 236 (Bankr. S.D. Cal. 1996); *Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

23. The Trust Debtors here are significantly different than other entities that have been held to be SARE debtors, such as entities that own undeveloped land or hold property for future development on which no current business operations are taking place. See, e.g. *In re Kara Homes, Inc., 363 B.R. 399 (Bankr. D.N.J. 2007).* The Trust Debtors submit that they do not meet the third characteristic of a SARE debtor because they and their commonly controlled and operated affiliates conduct substantial business on the real property. The Debtors, as a unit, consist of related entities that hold title to real property and conduct substantial business that generates the income for all of the Debtors.

24. The Trust Debtors are integral to the operation and success of the personal care homes, separate and apart from their ownership of the real property. By comparison, employing the practical view that courts have historically taken, the Debtors operate and should be considered similarly to hotel debtors and other debtors that own property on which active business operations are conducted, which are routinely found not to constitute SARE entities. *See, Centofonte v. CBJ Development, Inc., (In re CBJ Development, Inc.),* 202 B.R. 467, 472 (9th Cir. BAP 1996)(finding that hotel operations constitute a business and thus debtor-hotel operator was not a single asset real estate entity); *In re Whispering Pines Estate, Inc.*, 341 B.R. 134, 136 (Bankr. D.N.H. 2006)(hotel operations constitute a business on the property); *In re Larry Godwin Golf, Inc.,* 219 B.R. 391, 393 (Bankr. M.D.N.C. 1997)(holding that the definition of single asset real estate "includes the operation or holding of a piece of real estate for income rather than the operation of a business on the real estate); *In re Prairie*

*Hills Golf & Ski Club, Inc.,* 255 B.R. 228, 230 (Bankr. D. Neb. 2000)(denying request for relief from stay because the debtor "does not simply hold a passive investment" and is "actively conducting various enterprises on the property ....").

25. As these cases evidence, courts generally apply section 101(51B) to debtors who are just passive real estate investments vehicles, not debtors that own property where legitimate business activities are performed.

26. Moreover, affiliated debtors that operate under common management and control and are part of a business enterprise have been found to fall outside of the definition and purpose of 11 U.S.C. §362(d)(3), even if the particular individual debtor simply owns bare land. *See, In re Fiddler's Creek*, No. 8:10-bk-3846-KRM (Bankr. M.D.Fla., Feb. 23, 2010) (Court held debtors owning raw land were not SARE entities because they were part of a larger business enterprise and there was no indication of the abuse on which section 362(b)(3) was premised).

27. In these cases, the related Debtors operate under common management and control through other entities, all of which are ultimately owned by or as to which Abraham Atiyeh is the beneficiary. These are integrated business entities that were set up as such only because of a requirement of their original lender. Moreover, the Trust Debtors do not file separate tax returns. Their operations are included on Schedule E of the Mr. Ateyah's personal tax returns. Their operations are promoted through a unified marketing system and they share common accounting, legal and tax advisors, and share the Lender as their largest common creditor. Moreover, the Lender asserts that the assets of all four Debtors are subject to its security interest.

28. With these Debtors, all of the Debtors' properties and assets are managed synergistically, rendering their value greater together, as a going concern, than separately. This fact alone runs contrary to the purpose for treating entities as a SARE entity

29. Through Chapter 11, the Debtors intend to consolidate and resolve all of their financial difficulties together through a Chapter 11 plan, particularly as there is no longer a need to maintain separate entities for the real estate given that the original lender is no longer involved.

30. Like *Fiddler's Creek*, even to the extent that the Trust Debtors can be viewed as merely owning real property, these Debtors are clearly part of a larger business enterprise that interrelatedly and interdependently operate personal care homes. To be sure, subjecting the Trust Debtors to section 362(d)(3) would "elevate form over substance" with respect to these Debtors and their interrelated business operations with the Manor Debtors. *See Meruelo Maddux Properties, Inc. et al.*, No. SV 09-13356-KT (Bankr. C.D. Cal., June 17, 2009).

31. Section 362(d)(3) was added to the Bankruptcy Code to protect lenders by requiring the bankruptcy court to terminate or modify the automatic stay where a debtor can neither propose a viable plan nor makes payments to the secured creditor. *In re 652 West 160th LLC*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005). It was intended to curtail abusive filings by debtors that lack economic activity, have few employees and lack a going concern value. There is no reason to believe that the instant cases were filed for an improper purpose or trigger any abuse as to which section 362(d)(3) was designed to prevent.

32. Although the Trust Debtors are separate entities for purposes required by the original lender, they remain integrated into the overall operations of the Debtors' personal

care homes. Specifically, the Debtors' business operations are integrated.

33. In the Motion, the Lender ignores the economic reality of these Chapter 11 cases. It is simply not economically feasible to separate the Trust Debtors and their assets as SARE entities from the other affiliated and jointly administered Debtors and their assets.

34. Here, the Debtors have operated for decades and have many employees and care for many residents. It cannot be said that the Debtors cannot propose a viable plan at this stage in these cases where the Debtors have been as forthcoming as possible, submitting to numerous and intensive discovery and depositions while successfully moving through the early stage of Chapter 11 and beginning the process of proposing their Chapter 11 plan.

35. This case was filed less than 30 days ago, during the holidays, and the Debtors and certain of their contractors have been forced to spend almost 100 percent of their time sitting in depositions conducted by the Lender and responding to voluminous discovery with immediate production deadlines. Nevertheless, the Debtors have also engaged in discussions with taxing authorities and are in the process of retaining an appraiser to determine the value of their operations so that they can propose a Chapter 11 plan in the near term and resolve all of their financial difficulties on a consolidated basis.

36. Accordingly, the Debtors submit that the Trust Debtors do not meet all of the requirements necessary to be considered SARE entities and should not be subject to section 362(d)(3). Rather, they should be permitted to reorganize in an orderly fashion, which they intend to do as efficiently and expeditiously as possible.

## **THE SECTION 362(D)(3) PROVISIONS SHOULD BE EXTENDED**

37. To the extent that the Court determines that the Trust Debtors are subject to

section 362(d)(3), by separate motion, the Debtors intend to request that its provisions be extended such that the deadline for them to propose a viable plan be extended to 90 (ninety) days from the date of the hearing on the Lender's motion or ask for same deadline as applies to Manor debtors under chapter 11 (the "Extension Motion").

38. Moreover, despite section 362(d)(3) stating that the Court shall grant stay relief if the debtor fails to file a plan or make interest payment to the secured creditors, courts have exercised discretion to determine how such stay relief will be granted. *See, e.g., In re Planet 10, L.C.*, 213 B.R. 478, 481 (Bankr. E.D. Va. 1997) (conditioning stay relief on trustee being provided with a reasonable time to conduct 363 sale); *In re View West Condominium Assoc., Inc.*, Case No. 08-11561-BKC-RAM (July 29, 2008) the Court has discretion to modify or condition the stay rather than to terminate or annul the stay under section 362(d)); *In re Hope Plantation Group, LLC*, 393 B.R. 98 (Bankr. D. S.C. 2007) (the Court has discretion and is not required to terminate the stay outright); *In re Terraces Subdivisions, LLC*, No. A07-0048-DMD, 2007 WL 2220448 (Bankr. D. Alaska, August 2, 2008) (because debtor presented evidence of a capacity to propose a feasible plan, court denied full stay relief even though debtor had not filed a plan or began interest payments).

39. The Debtors have been actively moving their bankruptcy cases toward a resolution, despite being inundated with the Lender's depositions, discovery requests, motions and objections seeking to derail the Debtors efforts and consume the Debtors' economic resources from the outset. Among other things, the Debtors have:

- Obtained approval of the various first day motions filed in this case and implemented the authorizations granted by such orders;

- Identified and sought approval to employ an appraiser to value the Debtors' operations so that they can propose a Chapter 11 plan to resolve their cases;

- Negotiated with certain tax authorities to determine a plan to resolve the Debtors' tax obligations in a Chapter 11 plan;

- Voluntarily provided voluminous information and documents, including via six (6) depositions, beyond what was provided to the Lender prior to the Petition Date to the Lender and the Office of the United States Trustee;

- Engaged in discussions with various financial institutions regarding financing to fund a Chapter 11 plan; and

- Complied with the operating guidelines and reporting requirements established by the Office of the United States Trustee to date.

40. The Debtors will also comply with their upcoming obligations to file schedules and statements of financial affairs and attend the section 341 meeting of creditors.

41. The Debtors' progress in just over three weeks, with significant intervening holidays and vacation schedules, has laid the necessary foundation to develope a Chapter 11 plan that will have a high probability of successful confirmation.

42. Despite the Lender's contrary efforts to date, the Debtors are hopeful that, in the weeks and months to come, they will be working together with the Lender, as they are with their other creditors, to reach consensus on a proposed plan of reorganization. At this stage of these cases, the Debtors submit that they have demonstrated their willingness to be transparent and responsive and their likelihood of a successful reorganization.

43. To reorganize, however, the Debtors require the Trust Debtors to be part of the

reorganization plan and urges this court to deny the Motion because the Trust Debtors do not meet the elements of a SARE entity given the nature and circumstances of the Debtors' business and operations.

44. Even if the Court finds that the Trust Debtors are SARE entities, the Debtors submit that the Court has discretion based upon the progress made by the Debtors to deny the relief sought by the Lender. Termination of the automatic stay would eviscerate the Debtors' efforts, prior to the Petition Date and since then, to recover from the impact of the COVID pandemic and resolve their financial difficulties. The Debtors are a family business that the Atiyeh family has dedicated their hearts and souls to maintaining at the highest level since its inception decades ago. These are not cases in which insiders have used the Debtors and their resources for their own benefit. To the contrary, the Atiyeh family has reduced expenses by consolidating services and replacing market rate employees with affiliated shared services to whom they can pay below market rate salaries or defer payments while they remedy their financial condition.

45. While the Debtors are hopeful that they will be able to proposed a viable Chapter 11 plan within the time provided under section 362(d)(3), their ability to do so is dependent upon events outside of their control, including obtaining appraisals of their properties and business operations and securing financing based on the resulting values to resolve their debts – all of which is underway at this time.

46. The Debtors should be provided the time needed to save their family business enterprise that they have successfully operated for decades until the mortgages on their real property were transferred to a hedge fund that now seeks to displace the Debtors from their

operations.

47. Accordingly, to the extent that the Court finds that the Trust Debtors are subject to section 362(d)(3), the Debtors urge the Court to grant the extensions and other relief sought by the Debtors in the Extension Motion.

## ANY INTEREST PAYMENTS SHOULD BE BASED ON THE VALUE OF THE REAL PROPERTY OWNED BY THE TRUST DEBTORS

48. To the extent that the Court finds that the Trust Debtors are SARE entities that are subject to section 362(d)(3) and declines to extend the deadline by which the Debtors must propose a viable plan, the Debtors submit that, in accordance with section 362(d)(3), the Trust Debtors be required to pay interest only at the non-default contract rate on the value of the Lender's interest in the Trust Debtors' real property.

49. The Trust Debtors' real property was very recently appraised in the fall of 2025, with the Whitehall Trust's real property determined to have a market value of $5,560,000 and the Saucon Trust's real property determined to have a market value of $7,820,000.

50. The non-default contract interest rate is 3.38% percent, resulting in monthly interest payments in the amount of $69,844.95 by the Whitehall Trust.

51. The non-default contract interest rate is 2.5% percent, resulting in monthly interest payments in the amount of $69,578.58 by the Saucon Trust.

52. The Debtors further request that, because the Lender is substantially undersecured, the Lender would not otherwise be entitled to interest payments; therefore, the payments should be applied to reduce the principal amount of the debt owed to the Lender post-petition and that the Debtors be credited with the amount of such payments against the amount to be paid to the Lender under a Chapter 11 plan in these cases.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order finding that the Trust Debtors are not subject to the single asset real estate provisions of the Bankruptcy Code.

Dated: January 23, 2026  
       Philadelphia, Pennsylvania

**/s/** Anne Aaronson  
**DILWORTH PAXSON LLP**  
Lawrence G. McMichael  
Anne M. Aaronson  
Michelle V. Lee  
1650 Market St., Suite 1200  
Philadelphia, PA 19103  
Telephone: (215) 575-7000  
Facsimile: (215) 575-7200  
Email: lmcmichael@dilworthlaw.com  
      aaronson@dilworthlaw.com  
      mlee@dilworthlaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>Whitehall Trust, et al.,[2]<br><br>                      Debtors. | Chapter 11<br>Case No. 25-15241<br><br>Jointly Administered |

AND NOW, this ____ day of January, 2026, upon the motion of Lehigh Valley 1, LLC in the above-captioned cases, for entry of an order determining that the Trust Debtors are subject to the provisions of the Bankruptcy Code , it is hereby:

ORDERED that the Motion is DENIED.

                                                            BY THE COURT:

                                                           _____

Date:                                               Honorable Patricia Mayer

---

[2] The Debtors in these Chapter 11 Cases are: (i) Whitehall Trust; (ii) Saucon Trust; (iii) Whitehall Manor, Inc. (5606); (iv) Saucon Valley Manor, Inc. (2894).